# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-00716-RJC-DSC

| | |
|---|---|
| **MOVEMENT MORTGAGE, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| **MARK MCDONALD AND FRANKLIN** ) | |
| **FIRST FINANCIAL, LTD.,** ) | |
| ) | |
| **Defendants.** ) | |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss in Part Plaintiff's Second Amended Complaint," Doc. 49, filed August 29, 2018 and the parties' associated briefs and exhibits, Docs. 50, 56 and 58. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss be <u>denied</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Second Amended Complaint, Doc. 38, as true, Movement Mortgage LLC is a mortgage lending company. Mark McDonald was formerly employed as Market Leader at Movement's Plantation, Florida office. McDonald was responsible for supervising Sales Managers, Branch Managers, Loan Officers and Loan Officer Assistants originating loans in the Plantation office. McDonald was responsible for the performance of his

market and increasing its profitability. His responsibilities included hiring employees and developing relationships with referral sources such as real estate agents, marketing Movement's services and making strategic decisions. McDonald was also responsible for managing Movement's relationship with realtor referral sources in the Palm Beach, Jupiter, Treasure Coast, Port St. Lucie, and Vero Beach offices of Keller Williams Realty ("South Florida KW Offices").

As a Market Leader, McDonald understood that he had unique access to Movement's trade secrets and confidential information. He agreed that during and after his employment he would use such information solely for Movement's benefit and would not disclose the information to third parties without prior written authorization. He also agreed that during his employment and for twelve months thereafter, he would not solicit any of Movement's employees, customers or clients.

In July 2017, McDonald began talking to Franklin First Financial about going to work for them. On July 26, 2017, Franklin submitted a new hire report for McDonald to the North Carolina State Directory of New Hires stating that his hire date was August 1, 2017. On October 6, 2017, while still employed by Movement, McDonald entered into a Division Branch Manager Agreement with Franklin stating that his employment with Franklin began that day.

On October 25, 2017, the South Florida KW Offices informed Movement that they would not be renewing any agreements with them. Movement alleges that Franklin acquired those accounts by offering to pay them twenty percent more than Movement. Movement alleges that Franklin knew these rates because McDonald shared confidential, proprietary and trade secret information with them while still employed with Movement.

From July until November 6, 2017, McDonald continued to work for Movement while at the same time recruiting its employees and collecting confidential information and trade secrets

that would benefit Franklin. This enabled Franklin to ascertain what the Movement employees were earning and offer them more money.  McDonald resigned from Movement on November 6, 2017. Movement alleges that in the weeks preceding and subsequent to McDonald's resignation, Franklin solicited approximately fifteen employees who had worked under McDonald in the Plantation office.

Unbeknownst to Movement at the time, from September 16 to November 20, 2017, Loan Officer Patricia Moste downloaded a large volume of files, many of which were confidential and/or trade secrets to removable flash drives in violation of Movement's policies. Movement alleges that Moste downloaded this information in coordination with McDonald.  Additionally, Movement alleges that Moste transferred documents to Franklin's file sharing site with the assistance of McDonald.  Moste later left Movement to join McDonald at Franklin.

In an attempt to prevent further harm, Movement filed its original Complaint and Motion for Temporary Restraining Order in Mecklenburg County Superior Court on November 14, 2017. On December 5, 2017, a TRO was entered against McDonald.  On December 12, 2017, Defendants filed a Notice of Removal to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a). On December 28, 2017, Movement amended its Complaint. See Doc. 9. The next few months were spent resolving jurisdictional issues related to McDonald's residency, including conducting jurisdictional discovery. On June 11, 2018, the undersigned issued a Memorandum and Recommendation recommending that Movement's Motion to remand be denied[1]. See Doc. 32.  On July 6, 2018, with leave of Court and Defendants' consent, Movement filed its Second Amended Complaint.  See Doc. 38.  Movement asserted causes of action for: (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair and deceptive trade practices; (4) tortious interference

---

[1] On August 15, 2018, the Honorable Robert J. Conrad, Jr. affirmed that Memorandum and Recommendation. See Doc. 46.

with contract and prospective economic advantage; and (5) breach of fiduciary duty and duty of loyalty.

On August 29, 2018, Defendants filed this Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that Movement's claims for breach of fiduciary duty and duty of loyalty, tortious interference with contract and prospective economic advantage, misappropriation of trade secrets, and unfair and deceptive trade practices fail to state claims upon which relief may be granted and should be dismissed.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Choice of Law

The parties dispute whether North Carolina or Florida law governs the claims in the Second Amended Complaint. This matter is before the Court based on diversity jurisdiction. "Federal courts sitting in diversity apply the substantive state law that would apply had the plaintiff filed the case in state court." Hickerson v. Yamaha Motor Corp., 882 F.3d 476, 480 (4th Cir. 2018). McDonald signed an Employment Agreement which states that it was made and entered into in North Carolina and shall be interpreted, enforced and governed in accordance with the laws of North Carolina. Defendants are not seeking to dismiss Movement's breach of contract claim.

They are seeking to dismiss Movement's tort claims. Since Movement pled these claims under both Florida and North Carolina law, the Court finds that it is premature to make a decision regarding choice of law at this stage of the proceedings. A choice of law inquiry may be very fact intensive and more appropriately undertaken after the record is sufficiently developed. Terry v. Swift Transportation, No. 1:16cv256, 2017 WL 1013074, at *7 (M.D.N.C. March 14, 2017)(citing Graboff v. The Collern Firm, Civ. Action No. 10–1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) (explaining that, "[d]ue to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts … have concluded that it is more appropriate to address the issue at a later stage in the proceedings," and that, "[h]ere, a choice of law analysis is premature because the record lacks necessary facts for the [c]ourt to conduct the fact-intensive, context-specific analysis required"). See also Beritelli v. Wells Fargo Bank, N.A., No. 1:11-CV-000179-MR, 2013 WL 5460179, at *13 (W.D.N.C. Sept. 30, 2013) ("[T]he Court cannot make a determination of the choice of law issue at this time. . . . The parties may revisit the choice of law issue at the summary judgment stage, at which time the Court will be in a better position to determine which state law is applicable."); Clean Earth of Md., Inc. v. Total Safety, Inc., No. 2:10–cv–119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) ("Importantly, a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery." (collecting cases))).

**C. Breach of Fiduciary Duty and Duty of Loyalty Claim**

Movement concedes that its Second Amended Complaint does not a state a claim for breach of fiduciary duty and duty of loyalty under North Carolina law. However, as explained above, the Court will not resolve the choice of law question now. The Court will analyze this claim under Florida law.

"The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." <u>Border Collie Rescue, Inc. v. Ryan</u>, 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006) (citing <u>Gracey v. Eaker</u>, 837 So. 2d 348, 353 (Fla. 2002)). Fiduciary obligations may arise "when one party delegates power to another to carry out a specific task on his behalf, and in so doing, reposes significant trust and confidence in the other[.]" <u>Zaki Kulaibee Establishment v. McFliker</u>, 771 F.3d 1301, 1312 (11th Cir. 2014). Moreover, "a fiduciary relationship may be implied in law based on the specific facts and circumstances surrounding the parties' relationship and the transaction in which they are involved." <u>Thunder Marine, Inc. v. Brunswick Corp.</u>, 277 Fed.Appx. 910, 912–13 (11th Cir. 2008).

Although "[a] fiduciary relationship will not generally be implied between an employer and employee," the "facts of a particular case may establish the existence of a confidential relationship between them concerning a particular transaction, thereby placing upon the parties the fiduciary obligations associated with a principal-agent relationship." <u>Traffic Tech, Inc. v. Montoya</u>, No. 16-CV-60177, 2016 WL 8678875, at *8 (S.D. Fla. Feb. 29, 2016). In <u>Montoya</u>, the court found that an employer had demonstrated a likelihood of success on a breach of fiduciary duty claim against a former employee because the employer had granted the employee "access to a wide range of confidential information (customer, supplier, agent, and transportation provider lists; rates, pricing, tariffs, customer programs, its computers, proprietary software, etc.)," which were "special circumstances" that "created a fiduciary relationship." <u>Id.</u>

Generally, an employee does not violate the duty of loyalty to his employer by organizing a competing business during his employment with the plan to begin it following his departure. <u>Furmanite Am., Inc. v. T.D. Williamson, Inc.</u>, 506 F.Supp.2d 1134, 1149 (M.D. Fla. 2007)(citing <u>Fish v. Adams</u>, 401 So.2d 843, 845 (Fla. 5th DCA 1981). However, "an employee may not engage

in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment." Id.

Defendants argue that Movement has not sufficiently alleged that McDonald owed them a fiduciary duty. The Court disagrees. The Second Amended Complaint alleges that McDonald held a managerial-level position, supervised approximately twenty-five employees, agreed to act as Movement's agent pursuant to his employment agreement, developed relationships with referral sources, exercised significant autonomy and control over his region and had access to confidential customer and employee information. Movement has sufficiently alleged that they placed McDonald in a position of trust and confidence and that he accepted that position and promised to act in Movement's best interests. He failed to do so by gathering trade secrets and confidential information and recruiting Movement employees to follow him to Franklin. The Court finds that these allegations are sufficient to withstand dismissal under Rule 12(b)(6) and recommends denying Defendants' Motion to Dismiss Movement's breach of fiduciary duty and duty of loyalty claim.

### D. Tortious Interference with Contracts and Prospective Economic Advantage Claim

To state a claim for tortious interference with a contract or business relationship under Florida law, the plaintiff must allege: (1) the existence of a contract or business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the contract or business relationship; (3) intentional and unjustified interference by the defendant with that relationship; and (4) damages to the plaintiff as a result of the defendant's interference. Bray v. Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1367 (M.D. Fla. 2007). "[I]n order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business

relationship with identifiable customers." Ferguson Transp., Inc. v. N. Am. Van Lines, Inc., 687 So.2d 821, 821 (Fla. 1996). Moreover, if a defendant knows of a third party's restrictive covenants with a plaintiff, and persists in working with that third party to violate those restrictive covenants, there is a reasonable inference that the defendant is intentionally and unjustifiably interfering with the business relationship giving rise to those restrictive covenants. Aerotek, Inc. v. Zahn, 625 Fed.Appx. 394, 396 (11th Cir. 2015).

Defendants argue that that this claim should be dismissed because the conduct alleged is the same as in the breach of contract claim. However, since Defendants are not seeking to dismiss the breach of contract claim, the enforceability of the Employment Agreement will not be determined until a later stage in the proceedings. Analysis of the economic loss doctrine is premature. If the Employment Agreement is found to be unenforceable, the economic loss doctrine would be inapplicable.

Defendants also argue that Movement failed to allege that they improperly solicited Movement's employees. The Court disagrees. Movement has alleged that McDonald secretly engaged in dual employment with Franklin and Movement, took Movement's trade secrets and confidential information, and improperly diverted business and employees to Franklin. Additionally, Movement alleges that Defendants knew of the employment agreements with Movement and continued to employ the former Movement employees. These allegations are sufficient to state a claim for relief under Florida law that is plausible on its face and withstands a motion to dismiss.

Under North Carolina law, a claim for tortious interference with contract must show (1) that a valid contract existed between the plaintiff and a third party; (2) that the defendant had knowledge of the plaintiff's contract with the third person; (3) that the defendant intentionally

induced the third person not to perform his contract with the plaintiff; (4) that the defendant acted without justification; and (5) that the interference caused the plaintiff actual damages. National Welders Supply Co. v. Roberts Oxygen Co., Inc., 3:07–CV–350–RJC, 2008 WL 1837251 at *1 (W.D.N.C. Apr. 22, 2008) (citing Peoples Sec. Life Ins. Co. v. Hooks, 367 S.E.2d 647, 649-50 (N.C. 1988)). The only difference for a tortious interference with prospective economic advantage claim is that instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct. Beck v. City of Durham, 573 S.E.2d 183, 191 (N.C. App. 2002). "Interference with a contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC, 784 S.E.2d 457, 462 (N.C. 2016). To survive dismissal, a complaint alleging tortious interference "must admit of no motive for interference other than malice." Pinewood Homes, Inc. v. Harris, 646 S.E.2d 826, 832–33 (2007).

Defendants argue that Movement's tortious interference claim arises out of its breach of contract claim and is barred by the economic loss rule. Under the economic loss rule, tortious conduct must be "identifiable" and "distinct from the primary breach of contract claim," and must also be accompanied by sufficient aggravating circumstances to constitute an additional claim. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). In considering whether to allow a cause of action in tort that parallels a claim for breach of contract, courts ask "whether the claims at issue could really be decided under contract theory." ACS Partners, LLC v. Americon Group, Inc., 3:09-cv-464-RJC-DSC, 2010 WL 883663, *8 (W.D.N.C. Mar. 5, 2010).

Separate from any breach of contract by McDonald, Movement has alleged that Defendants intentionally used and are continuing to use confidential information to target and induce

Movement's employees to leave in order to join Franklin.  Further, Movement alleges that McDonald coordinated with former Movement employee Moste to download numerous files containing trade secrets and confidential information. The Court finds that Movement has adequately pled conduct distinct from the breach of contract claim.

Defendants also argue that Movement has failed to sufficiently allege that they acted without justification. The North Carolina Supreme Court has held that if the defendant's interference is "for a legitimate business purpose, his actions are privileged. Numerous authorities have recognized that competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." Hooks, 367 S.E.2d 647, 650 (N.C. 1988).  This "privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and bona fide attempt to protect the interest of the defendant which is involved." Id.; United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 387 (N.C. 1988) (holding that in Hooks "[w]e concluded that the fact that the plaintiff and defendant were in competition was sufficient to justify the defendant 'in offering the plaintiff's employees new jobs and locating them in their previously assigned territory' ... however, we also emphasized that '[t]he privilege [to interfere] is conditional or qualified; that is it is lost if exercised for a wrong purpose' "). "If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified." Hooks, 367 S.E.2d at 650.

The Court finds that Movement's claim is based upon allegations that Defendants have interfered with Movement's contracts by means that are *not* lawful.  Movement has alleged that despite being aware of its existing contracts and economic expectations with its employees and customers, Defendants sought to interfere with them.  McDonald remained at Movement, even

after his start date with Franklin, to gather trade secrets and confidential information and to recruit employees to follow him to Franklin knowing that they had agreements with Movement. Movement has pled enough to allege that Defendants acted without justification.

Based upon the above analysis under Florida and North Carolina law, the Court respectfully recommends denying Defendant's Motion to Dismiss the tortious interference with contract and prospective economic advantage claims.

### E. Misappropriation of Trade Secrets Claim

A trade secret is "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process" that (a) derives value "from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure" and (b) "[i]s subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66–152(3). Misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent." N.C. Gen. Stat. § 66–152(1).

Under North Carolina law, a plaintiff "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." Washburn v. Yadkin Valley Bank and Trust Co., 660 S.E.2d 577, 585 (N.C. App. 2008) (quoting VisionAIR, Inc. v. James, 606 S.E.2d 359, 364 (N.C. App. 2004)). General allegations and sweeping conclusory statements are insufficient. Id. Furthermore, North Carolina law does not protect customer information that is held in the memory of an employee who has departed. Asheboro Paper & Packaging, Inc. v. Dickinson, 599 F.Supp.2d 664, 677 (M.D.N.C.2009).

"Customer information, preferred customer pricing, employees' salaries,…budget information and structure of the business" may constitute trade secrets under North Carolina law. Sunbelt Rentals v. Head & Engquist Equip., L.L.C., 620 S.E.2d 222, 227 (N.C. App. 2005); see also Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc., 586 S.E.2d 507, 511 (N.C. App. 2003) (noting that "information regarding customer lists, pricing formulas and bidding formulas can qualify as" trade secrets); Byrd's Lawn & Landscaping v. Smith, 542 S.E.2d 689, 692 (N.C. App. 2001)("Confidential data regarding operating and pricing policies can also qualify as trade secrets. It is apparent that the ability to predict a competitor's bid with reasonable accuracy would give a distinct advantage to the possessor of that information."); State ex rel. Utils. Comm'n v. MCI Telecomms. Corp., 514 S.E.2d 276, 282 (1999) (concluding that a "compilation of information" involving customer data and business operations which has "actual or potential commercial value from not being generally known" is sufficient to constitute a trade secret).

Defendants acknowledge that the analysis is the same under Florida law. In order to state a plausible claim for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 et seq., a plaintiff must allege that (1) it possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. VAS Aero Servs., LLC v. Arroyo, 860 Supp. 2d 1349, 1358 (S.D. Fla. 2012).

Defendants argue that Movement's allegations are too vague and conclusory under North Carolina and Florida law. The Court disagrees. Movement has alleged that its trade secrets include "compilations of identifying information about Movement's customers, and the specifics about each customer's loan history, interest rates, and applications." Doc. 38 at ¶ 80. Movement further

alleges that, "[w]ith respect to employee information, Movement's trade secrets includ[e] compilations of identifying information about its employees, their skill sets and training, and specifics about their compensation and bonus structure." Id. at ¶ 81. Movement has alleged that it derives significant independent economic value through customer and employee information. Movement also alleges that the customer information is very specific to loan history, interest rates, and applications, as well as the rates paid by the South Florida KW Offices. Id. at ¶¶ 25, 80. Additionally, Movement alleges that, in coordination with McDonald, Moste obtained a large volume of files containing trade secrets and confidential information, primarily on weekends when no one else would have been in the office. Id. at ¶¶ 44-51 & Ex. 2-3. Complete lists of those files are attached to the Second Amended Complaint as Exhibits 2 and 3. They include eight files in a folder entitled "MM_Confidential" and more than ten documents in a folder entitled "clients_mark_mcdonald." Id. at ¶ 50. Movement further alleges that the files misappropriated by Moste and listed in Exhibits 2 and 3 to the Second Amended Complaint constitute trade secrets.

The Court concludes that Movement has adequately alleged the existence of trade secrets and respectfully recommends that Defendants' Motion to Dismiss Movement's misappropriation of trade secrets claim be denied.

### F. Unfair and Deceptive Trade Practices Claim

The elements of a claim for UDTP are "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 226 (N.C. 2013) (alteration in original). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72,

653 S.E.2d 393, 399 (2007) (internal quotation marks omitted). "[A] practice is deceptive if it has the capacity or tendency to deceive." Id. (alteration in original) (internal quotation marks omitted). 112.

North Carolina courts have held that certain statutory and common law claims can support a UDTP claim. See, e.g., Med. Staffing Network, Inc. v. Ridgway, 670 S.E.2d 321, 329 (N.C. App. 2009) (misappropriation of trade secrets); Compton v. Kirby, 577 S.E.2d 905, 917 (N.C. App. 2003) (breach of fiduciary duty and constructive fraud); Roane-Barker v. Se. Hosp. Supply Corp., 392 S.E.2d 663, 670 (N.C. App. 1990) (tortious interference).

Defendants acknowledge that the analysis is the same under Florida law. See Berry v. Budget Rent A Car Sys., Inc., 497 F.Supp.2d 1361, 1368 (S.D. Fla. 2007)(explaining that the North Carolina Unfair and Deceptive Trade Practices Act and the Florida Unfair and Deceptive Trade Practices Act are quite similar as both look to the Federal Trade Commission Act and apply similar standards of unfairness).

Therefore, having concluded that Movement has stated two claims for tortious interference with contract and prospective economic advantage, breach of fiduciary duty, and misappropriation of trade secrets, the Court concludes that Movement has stated a claim for UDTP. See Med. Staffing Network, 670 S.E.2d at 329; Wells Fargo Ins. Servs. USA v. Link, 2018 NCBC LEXIS 42, at *51 (N.C. Super. Ct. May 8, 2018) (denying motion to dismiss UDTP claim based upon misappropriation of trade secrets claim that survived dismissal). Consequently, the Court respectfully recommends that Defendants' Motion to Dismiss Movement's UDTP claim be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss in Part Plaintiff's Second Amended Complaint," Doc. 49 be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: November 5, 2018

David S. Cayer
United States Magistrate Judge