UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00716-RJC-DSC

| MOVEMENT MORTGAGE, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| FRANKLIN FIRST FINANCIAL, LTD., | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Default Judgment. (Doc. No. 74.)

I. BACKGROUND

On November 14, 2017, Plaintiff Movement Mortgage, LLC ("Plaintiff") filed a Complaint and Motion for Temporary Restraining Order against Defendants Mark McDonald ("McDonald") and Franklin First Financial, Ltd. ("Franklin") in the Superior Court of Mecklenburg County, North Carolina. (Doc. No. 1-1.) On December 5, 2017, a TRO was entered against McDonald. (Doc. No. 1-1.) On December 12, 2017, Franklin removed the action to the United States District Court for the Western District of North Carolina on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(2). (Doc. No. 1.)

With leave of Court and Defendants' consent, Plaintiff filed its Second Amended Complaint on July 6, 2018. (Doc. No. 38.) Defendants filed their Answer to the Second Amended Complaint on August 15, 2018. (Doc. No. 45.) On August 29,

2018, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint, which was denied on February 5, 2019. (Doc. No. 67.)

On November 13, 2018, the Court granted Defendants' counsel's Motion to Withdraw. (Doc. No. 65.) The Court ordered Franklin to secure replacement counsel within thirty days, expressly noting that a corporation may appear in federal court only through licensed counsel. (Doc. No. 65.)

On March 29, 2019, the Court Granted Plaintiff and McDonald's joint motion for dismissal with prejudice of Plaintiff's claims against McDonald. (Doc. No. 72.) That same day, the Court entered default against Franklin based on its failure to secure counsel in direct contravention of the Court's order. (Doc. No. 73.)

On April 29, 2019, Plaintiff filed the instant Motion for Default Judgment. (Doc. No. 74.) The motion is ripe for resolution.

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure governs Plaintiff's Motion for Default Judgment. "Rule 55 sets forth a two-step process for obtaining a default judgment." Brown v. Prime Star Grp., Inc., No. 3:12-cv-165, 2012 U.S. Dist. LEXIS 141495, at *5 (W.D.N.C. Sept. 30, 2012). A plaintiff must first seek an entry of default under Rule 55(a). L & M Cos. v. Biggers III Produce, Inc., No. 3:08-cv-309, 2010 U.S. Dist. LEXIS 46907, at *14 (W.D.N.C. Apr. 9, 2010). Rule 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Upon the entry of default, the

2

defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." Brown, 2012 U.S. Dist. LEXIS 141495, at *4.

"After the clerk has entered a default, the plaintiff may seek a default judgment." Silvers v. Iredell Cty. Dep't of Soc. Servs., No. 5:15-cv-00083, 2016 U.S. Dist. LEXIS 13865, at *9 (W.D.N.C. Feb. 3, 2016). Default judgment is proper "only if the well-pleaded factual allegations in a complaint both establish a valid cause of action and entitle the plaintiff to an award of damages or other relief." i play. Inc. v. D. Catton Enter., LLC, No. 1:12-cv-22, 2015 U.S. Dist. LEXIS 29870, at *6 (W.D.N.C. Mar. 10, 2015). In so deciding, courts in this district apply the standard used to evaluate a Rule 12(b)(6) motion to dismiss. Silvers, 2016 U.S. Dist. LEXIS 13865, at *18–19. "If the Court determines that liability is established, it must then determine the appropriate amount of damages." Bogopa Serv. Corp. v. Shulga, No. 3:08-cv-365, 2011 U.S. Dist. LEXIS 17408, at *4 (W.D.N.C. Feb. 8, 2011). "The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages." EEOC v. Carter Behavior Health Servs., No. 4:09-cv-122, 2011 U.S. Dist. LEXIS 129493, at *9–10 (E.D.N.C. Oct. 7, 2011). "[A] court may enter a default judgment as to damages with or without a hearing. As long as there is an adequate evidentiary basis in the record for an award of damages, the Court may make such a determination without a hearing." Bogopa Serv. Corp., 2011 U.S. Dist. LEXIS 17408, at *5 (citation omitted).

### III. DISCUSSION

The Court has entered default against Franklin. (Doc. No. 73.) The Court thus

proceeds to analyzing the propriety of default judgment.

### A. The well-pleaded allegations of the Second Amended Complaint are sufficient to establish liability.

Taking the allegations of the Second Amended Complaint as true, as the Court must, Plaintiff is a mortgage lending company. (Doc. No. 38, ¶ 1.) McDonald was employed as Market Leader of Plaintiff's Plantation, Florida office from January 12, 2015 through November 6, 2017. (Doc. No. 38, ¶¶ 11, 26.) McDonald supervised sales managers, branch managers, loan officers, and loan officer assistants originating loans in the Plantation office. (Doc. No. 38, ¶ 14.) McDonald was responsible for the performance of his market and increasing its profitability. (Doc. No. 38, ¶ 14.) His responsibilities further included hiring employees, marketing Plaintiff's services, making strategic decisions, and developing relationships with referral sources such as real estate agents. (Doc. No. 38, ¶ 14.) McDonald was also responsible for managing Plaintiff's relationship with realtor referral sources in the Palm Beach, Jupiter, Treasure Coast, Port St. Lucie, and Vero Beach offices of Keller Williams Realty ("South Florida KW Offices"). (Doc. No. 38, ¶ 15.)

As a Market Leader, McDonald understood that he had unique access to Plaintiff's trade secrets and confidential information. (Doc. No. 38, ¶ 18.) He agreed that during and after his employment, he would use such information solely for Plaintiff's benefit and would not disclose the information to third parties without Plaintiff's prior written authorization. (Doc. No. 38, ¶ 18.) He also agreed that during his employment and for twelve months thereafter, he would not solicit any of Plaintiff's employees, customers, or referral sources. (Doc. No. 38, ¶ 19.)

In July 2017, McDonald began talking to Franklin about employment opportunities. (Doc. No. 38, ¶ 21.) On July 26, 2017, Franklin submitted a new hire report for McDonald to the North Carolina State Directory of New Hires stating that McDonald's hire date was August 1, 2017. (Doc. No. 38, ¶ 21.) On October 6, 2017, while still employed by Plaintiff, McDonald entered into a Division Branch Manager Agreement with Franklin stating that his employment with Franklin began that day. (Doc. No. 38, ¶ 22.)

On October 25, 2017, the South Florida KW Offices informed Plaintiff that they would not be renewing any agreements with Plaintiff. (Doc. No. 38, ¶ 23.) Plaintiff alleges that Franklin acquired the accounts with the South Florida KW Offices by offering to pay 20% more than Plaintiff. (Doc. No. 38, ¶ 24.) Plaintiff further alleges that Franklin knew the rates Plaintiff paid the South Florida KW Offices because McDonald shared confidential, proprietary, and trade secret information with Franklin while still employed by Plaintiff. (Doc. No. 38, ¶ 25.)

McDonald resigned from Plaintiff with no advance notice on November 6, 2017. (Doc. No. 38, ¶ 26.) In the weeks preceding and subsequent to McDonald's resignation, Franklin solicited approximately fifteen employees who worked under McDonald in the Plantation office. (Doc. No. 38, ¶ 34.)

Unbeknownst to Plaintiff at the time, from September 16 to November 20, 2017, Loan Officer Patricia Moste ("Moste") downloaded a large volume of files, many of which were confidential and/or trade secrets, to removable flash drives. (Doc. No. 38, ¶ 44.) Plaintiff alleges that Moste downloaded this information in coordination

5

with McDonald. (Doc. No. 38, ¶¶ 45, 49.) Additionally, Plaintiff alleges that Moste transferred documents to Franklin's file sharing site with the assistance of McDonald. (Doc. No. 38, ¶¶ 52–53.) On December 12, 2017, Moste left her employment with Plaintiff and began working at Franklin. (Doc. No. 38, ¶ 54.)

Plaintiff's Second Amended Complaint asserts claims against Franklin for misappropriation of trade secrets, unfair and deceptive trade practices, and tortious interference with contract and prospective economic advantage. (Doc. No. 38, at 18–26.) In denying Defendants' Rule 12(b)(6) motion to dismiss, this Court concluded that the allegations of the Second Amended Complaint are sufficient to establish liability. (Doc. Nos. 63, 67); Silvers, 2016 U.S. Dist. LEXIS 13865, at *18–19 (applying the Rule 12(b)(6) motion to dismiss standard in determining whether there is a sufficient basis on which default judgment may be entered). Having concluded that liability is established, the Court next turns to the issue of damages.

### B. Plaintiff has established lost profits with reasonable certainty.

Plaintiff seeks lost profit damages in the amount of $1,142,431.00. (Doc. No. 74.) As an initial matter, the Court notes that Plaintiff assumes North Carolina law applies to its claims; however, in the Magistrate Judge's Memorandum and Recommendation on Defendants' motion to dismiss, which this Court adopted, the Magistrate Judge concluded that it was premature to decide whether North Carolina or Florida law applies to Plaintiff's claims. (Doc. No. 63, at 6.) Nevertheless, as there is no distinction between North Carolina and Florida law on lost profit damages, the Court concludes that it need not decide which law applies to Plaintiff's claims.

Under North Carolina and Florida law, the party seeking lost profit damages must prove such damages with reasonable certainty. McNamara v. Wilmington Mall Realty Corp., 466 S.E.2d 324, 329 (N.C. Ct. App. 1996); Sostchin v. Doll Enters., Inc., 847 So. 2d 1123, 1128 (Fla. Dist. Ct. App. 2003). "While the reasonable certainty standard requires something more than hypothetical or speculative forecasts, it does not require absolute certainty." Plasma Ctrs. of Am., LLC v. Talecris Plasma Res., Inc., 731 S.E.2d 837, 843 (N.C. Ct. App. 2012) (quotation marks omitted); see Del Monte Fresh Produce Co. v. Net Results, Inc., 77 So. 3d 667, 675 (Fla. Dist. Ct. App. 2011) ("Under Florida law, an inability to establish the amount of lost profits with absolute exactness will not defeat recovery." (quotation marks omitted).) "Moreover, there is no bright-line rule in determining what amount of evidence is sufficient to establish lost profits: '[Courts] have chosen to evaluate the quality of evidence of lost profits on an individual case-by-case basis in light of certain criteria to determine whether damages have been proven with reasonable certainty.'" Byrd's Lawn & Landscaping, Inc. v. Smith, 542 S.E.2d 689, 693 (N.C. Ct. App. 2001) (quoting Iron Steamer, Ltd. v. Trinity Restaurant, Inc., 431 S.E.2d 767, 770 (N.C. Ct. App. 1993)); see Whitby v. Infinity Radio, Inc., 951 So. 2d 890, 898 (Fla. Dist. Ct. App. 2007) (stating that the reasonable certainty standard is met as long as "the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount").

Here, Plaintiff has submitted profit and loss data for its Southeast Florida Region, which is the region over which McDonald was Market Leader from January

7

12, 2015 through November 7, 2017. (Doc. No. 75-2.) The profit and loss data covers the time period from March 2015 through October 2018 and, thus, includes the twelve-month time period following the end of McDonald's employment during which he was prohibited from soliciting Plaintiff's employees, customers, and referral sources (November 2017–October 2018). (Doc. No. 75-2.) Plaintiff's Net Income Before Taxes ("NIBT") for the Southeast Florida Region for the twelve months immediately preceding McDonald's departure from Plaintiff (November 2016–October 2017) was $1,142,431.00—the amount that Plaintiff seeks to recover in lost profit damages. (Doc. No. 75-2.) Plaintiff's NIBT for the Southeast Florida Region for the twelve months immediately following McDonald resigning and joining Franklin (November 2017–October 2018) was -$39,947.00. (Doc. No. 75-2.)

In addition to profit and loss data, Plaintiff has submitted an affidavit of Matthew Schoolfield, its Southeast Regional Director. (Doc. No. 75-3.) Schoolfield is responsible for managing all of Plaintiff's loan offices in Mississippi, Alabama, Georgia, Louisiana, and Florida. (Doc. No. 75-3, ¶ 5.) McDonald reported directly to Schoolfield. (Doc. No. 75-3, ¶ 6.) Schoolfield avers that as compared to Plaintiff's NIBT for the Southeast Florida Region from November 2016 through October 2017, he would have expected Plaintiff's NIBT from November 2017 through October 2018 to either remain the same or increase if McDonald and his team had not left for Franklin. (Doc. No. 75-3, ¶ 11.) After McDonald resigned without notice on November 7, 2017, Schoolfield tried to replace McDonald and his team by intensifying recruiting and hiring efforts in the Southeast Florida Region. (Doc. No. 75-3, ¶ 12.)

8

Schoolfield also increased communication efforts and took in-person meetings in the Southeast Florida Region to repair any internal reputational and public relations damage done by McDonald and Franklin. (Doc. No. 75-3, ¶ 12.) Schoolfield attributes Plaintiff's loss of NIBT in the Southeast Florida Region from November 2017 through October 2018 to Franklin's solicitation of McDonald and his team. (Doc. No. 75-3, ¶ 13.)

The Court concludes that the above evidence is sufficient to establish Plaintiff's lost profits with a reasonable degree of certainty. Based on the foregoing, the Court concludes that Plaintiff is entitled to lost profit damages in the amount of $1,142,431.00.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Default Judgment, (Doc. No. 74), is **GRANTED**; and

2. Judgment is **ENTERED** in favor of Plaintiff and against Franklin in the amount of **$1,142,431.00**.

Signed: September 27, 2019

Robert J. Conrad, Jr.
United States District Judge